UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-CV-00369-FDW-DCK

| AUDREY KIMNER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| DUKE ENERGY 401K AND RETIREMENT SAVINGS PLAN, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant Duke Energy 401K and Retirement Savings Plan's Motion to Dismiss (Doc. No. 12). This matter has been fully briefed, (Doc. Nos. 13, 15, 17), and is ripe for ruling. For the reasons set forth below, Defendant's Motion is GRANTED.

## I. BACKGROUND

Plaintiff divorced her husband, Michael Kimner ("ex-husband"), in 2011 after fourteen years of marriage. (Doc. No. 1-1.) Her ex-husband was ostensibly employed by Duke Energy Corporation ("Duke") for a length of time sufficient to create some stake in two Duke 401K retirement plans ("the Plans"), namely the Duke Energy Retirement Cash Balance Plan ("RCBP") and the Duke Energy Retirement Savings Plan ("RSP"). (Doc. Nos. 12-3, 12-5.) The Employee Retirement Income Security Act of 1974 ("ERISA") governs the Plans and their benefits.

After the divorce was finalized, Plaintiff claims her ex-husband relentlessly stalked and wiretapped her, allegedly with the assistance of AT&T, and she eventually moved to Texas "for her safety." (Doc. Nos. 1, 17.) In Texas, in 2017, she had two Qualified Domestic Relation Orders ("QDROs") drafted, which she presented to South Carolina state court Judge Wayne Creech for

1

signature. (Id.) Judge Creech did not sign these QRDOs, a decision Plaintiff argues was made "in retaliation because the entire county was involved in fraud for profit schemes" to usurp a prior arbitration agreement and steal her assets. (Id.) These documents are, additionally, unsigned by either Plaintiff or her ex-husband. (Id.)

In April 2018, Plaintiff's ex-husband petitioned a South Carolina family court for relief following Plaintiff's failure to follow court orders to pay child support arrearage and outstanding fees due to him under a prior judgment. (Doc. No. 13-2.) South Carolina state Judge William J. Wylie, Jr. oversaw the petition and found Plaintiff in contempt of court. (Id.) Judge Wylie also concluded Plaintiff owed her ex-husband $65,806.20 in total fees, and resolved Plaintiff's ex-husband was entitled to an offset of prior indebtedness to Plaintiff. (Id.) That offset "satisf[ied] [the ex-husband's] obligations associated with this Court's prior Order regarding the transfer of [ex-husband's] retirement funds to [Plaintiff] by way of a QDRO." (Doc. No. 12-2.) Judge Wylie continued, "As such, [ex-husband] was deemed to be in full compliance [with] his above-referenced financial obligations and this Court's Order associated therewith and was relieved of any further obligations associated therein." (Id.) Finally, "[Plaintiff] has no valid claim to any of [her ex-husband's] benefits under the Duke Energy Retirement Cash Balance Plan . . . and Duke Energy Retirement Savings Plan . . . and, as such, [ex-husband] is entitled to 100% of the benefits under said specified plans." (Id.)

On June 22, 2023, Plaintiff filed her *pro se* Complaint against Duke Energy Corporation. (Doc. No. 1.) In her Complaint, Plaintiff appears to argue she is entitled to some partial ownership of the Plans' proceeds earned by her ex-husband through his employment, presumably under 29 U.S.C. § 1132(a)(1)(B), though Plaintiff, proceeding *pro se*, does not cite the pertinent statute. 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . by a . . . beneficiary . . . to recover

benefits due . . . under the terms of [the] plan[.]"); (Doc. Nos. 1, 1-1.) Plaintiff also mentions "ADA Rights under Title II and III" and the Hobbs Act but fails to offer sufficient elaboration for the Court to interpret these claims. (Doc. No. 1.)

On October 3, 2023, Defendant filed a Motion to Dismiss, arguing Plaintiff's Complaint should be dismissed in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 12.) For the reasons set forth below, this Court finds Plaintiff's Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. STANDARD OF REVIEW

This Court recognizes "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

### A. Rule 12(b)(1)

A motion to dismiss for failure to exhaust administrative remedies may be governed by Federal Rule of Civil Procedure 12(b)(1) or Rule 12(b)(6), depending on whether Congress has identified the matter as jurisdictional. See Fort Bend Cnty v. Davis, 587 U.S. 541 (2019). A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. See, e.g., Davis v. Thompson, 367 F. Supp. 2d 792, 799 (D. Md. 2005). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction. Demetres v. East West Constr., Inc., 776 F.3d 271, 272 (4th Cir. 2015); Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a

factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted).

The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.; see also Robinson v. N.C. Emp. Sec. Comm'n, No. 3:09-CR-00088-W, 2009 WL 3526495, at *4 (W.D.N.C. Oct. 23, 2009).

**B. Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted. As a general matter, a motion to dismiss under Rule 12(b)(6) should not be granted unless it appears certain the plaintiff can prove no set of facts which would support her claim and would entitle her to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When analyzing whether to grant a motion to dismiss, the Court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. Id. (citing De Sole v. United States, 947 F.2d 1169, 1171 (4th Cir. 1991)).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contested facts or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Circ. 1992), cert. denied, 510 U.S. 828 (1993). To be legally sufficient, a pleading

4

must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain "enough facts to state a claim that is plausible on its face" to survive a motion to dismiss under Rule 12(b)(6). Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is responsible for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

Complaints written by *pro se* plaintiffs are construed liberally in favor of the plaintiff, so courts will hold a *pro se* plaintiffs' documents "to a less stringent standard than those drafted by attorneys." See Smith v. Greenville Cnty. Sch. Dist., No. 6:10-2478, 2010 WL 4484099 at *1 (Oct. 5, 2010) (citing Erickson v. Pardus, 551 U.S. 89 (2007); Estelle v. Gamble, 429 U.S. 97 (1976)). However, even under this less stringent standard, "the *pro se* complaint is subject to summary dismissal" if the court is unable to "reasonably read the pleadings to state a valid claim on which plaintiff could prevail" without "construct[ing] plaintiff's legal arguments for her." Id. (citing Small v. Endicott, 988 F.2d 411, 417-18 (7th Cir. 1993)).

To survive a Rule 12(b)(6) motion, a *pro se* complaint must allege sufficient facts to support all the legal elements of the claim. Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761 (4th Cir. 2003) ("While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief." (emphasis in original)); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

5

Case 3:23-cv-00369-FDW-DCK   Document 20   Filed 08/07/24   Page 5 of 11

Finally, a court has the discretion to dismiss under Rule 12(b)(6) either with or without prejudice. See Ostrzenski v. Seigel, 177 F.3d 245, 252–53 (4th Cir. 1999). The Fourth Circuit has held that:

> A dismissal under Rule 12(b)(6) generally is not final or on the merits and the court normally will give plaintiff leave to file an amended complaint. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading. This is true even though the court doubts that plaintiff will be able to overcome the defects in his initial pleading. Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim. The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim.

Id. (quoting 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 360–67 (2d ed. 1990)) (emphasis omitted). Thus, even where a plaintiff is proceeding *pro se*, a court may refuse to allow amendments to the pleadings where permitting proposed changes would be futile, and in such cases dismissal with prejudice is appropriate. Id.; see also Foman v. Davis, 371 U.S. 178, 182 (1962) (holding permissible reasons for denying leave to amend pleadings include "repeated failure to cure deficiencies by amendments previously allowed ... [and] futility of amendment"); McDaniel v. Liberty Mut. Ins. Co., No. 321CV00610FDWDSC, 2023 WL 320962, at *3–4 (W.D.N.C. Jan. 19, 2023), appeal dismissed, No. 23-1187, 2023 WL 4797393 (4th Cir. July 27, 2023)

### III. ANALYSIS

Plaintiff has failed to exhaust her administrative remedies under the RSP, RCBP, and ERISA. (Doc. Nos. 12-3, 12-5.) Furthermore, Plaintiff has failed to present a valid QDRO entitling her to alienation of her ex-husband's benefits. Thus, Plaintiff's Complaint must be dismissed.

6

A. Rule 12(b)(1)

ERISA regulates employee benefit plans "by establishing standards of conduct, responsibility, and obligation for fiduciaries of [those] plans, and by providing for appropriate remedies, sanctions, and ready access to the [f]ederal courts." 29 U.S.C. § 1001(b). In service of those aims, ERISA creates a wide range of public and private enforcement mechanisms. See generally 29 U.S.C. § 1132. Hayes v. Prudential Ins. Co. of Am., 60 F.4th 848, 852 (4th Cir. 2023). Claimants seeking benefits under a benefit plan governed by ERISA are generally required to "exhaust the remedies provided by the employee benefit plan in which he [or she] participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132." Makar v. Health Care Corp., 872 F.2d 80, 82 (4th Cir. 1989).

The Fourth Circuit has further affirmed, "An ERISA welfare benefit plan participant must both pursue and exhaust plan remedies before gaining access to the federal courts." Gayle v. United Parcel Service, Inc., 401 F.3d 222, 226 (4th Cir. 2005). Plaintiffs may be barred from seeking relief from a court when they neglect to follow administrative procedures and do not file an administrative appeal within specified time limits. Id. at 229–30. These time limits are enforced by courts to decrease "the probability of inconsistent results where one claimant is held to the limitation, and another is not. Similarly, permitting appeals well after the time for them has passed can only increase the cost and time of the settlement process." Id. at 226. In addition, internal time limitations contained within plans "are to be followed just as ordinary statute of limitations" may. Id.; see also, e.g., Buck v. Cont'l Cas. Co., No. 1:06CV1000, 2008 WL 11355359, at *2 (M.D.N.C. June 6, 2008).

However, the exhaustion question is not one of jurisdiction, but one of mandatory claim-processing rules. See, e.g., Peria v. Washington Metro. Area Transit Auth., No. GJH-20-0121,

7

2020 WL 5759764, at *3 (D. Md. Sept. 28, 2020) (describing at length the question of administrative exhaustion and jurisdiction); see also Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009), abrogated by Fort Bend Cnty. v. Davis, 587 U.S. 541 (2019). As the Supreme Court noted, there is a distinction between jurisdictional prescriptions and nonjurisdictional claim-processing rules, which "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Henderson v. Shinseki, 562 U.S. 428, 435 (2011). A claim-processing rule may be "mandatory" in the sense that a court must enforce the rule if a party "properly raise[s]" it. Eberhart v. United States, 546 U.S. 12, 19 (2005) (per curiam). But an objection based on a mandatory claim-processing rule may be forfeited "if the party asserting the rule waits too long to raise the point." Id. at 15 (quoting Kontrick v. Ryan, 540 U.S. 443, 456 (2004)); see also Fort Bend, 587 U.S. at 548–49.

The Supreme Court has characterized as nonjurisdictional an array of "mandatory claim-processing rules and other preconditions to relief." Fort Bend, 587 U.S. at 549–50. Indeed, while the Court does not demand Congress "incant magic words" to render a prescription jurisdictional, but unless there has been some showing of Congressional intent to render a matter jurisdictional, "courts should treat the restriction as nonjurisdictional in character." See Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013); Arbaugh v. Y&H Corp., 546 U.S. 500, 502 (2006).

Thus, this Court shall interpret Defendant's 12(b)(1) motion to dismiss as a 12(b)(6) motion to dismiss on the merits of the claim under the standard of review described above. Defendant has properly raised the issue in the Motion to Dismiss. (Doc. No. 12.)

**B. Rule 12(b)(6)**

Here, the RCBP provides, in pertinent part, "If a [Claimant] has any grievance . . . [he or she] shall submit the claim to the Plan Administrator," which will then bear the responsibility for

8

Case 3:23-cv-00369-FDW-DCK   Document 20   Filed 08/07/24   Page 8 of 11

examining the claim on the merits. (Doc. No. 12-3.) Moreover, "Any claim must be submitted within the 'applicable limitations period,'" that being two years from the moment the Claimant first had, or should have had, information on the benefit's time limitation, the date upon which the first payment was made, or the date on which the action complained of first occurred. (Id.) The RSP is governed by near-identical language. (Doc. No. 12-5.)

Plaintiff, in her complaint, does not appear to affirm she made any effort to submit a claim to a Duke representative regarding either of her ex-husband's Plans. Additionally, Duke claims she "has not actually submitted[] a formal claim with either Plan raising the issues set forth in her complaint." (Doc. No. 13.) This Court also fails to identify any evidence of futility or denial of meaningful access, given Plaintiff's past engagement with Duke employees and failure to submit a valid claim to Duke's processor. See, e.g., Makar, 872 F.2d at 83 (defining futility); see also Hickey v. Digital Equip. Corp., 43 F.3d 941, 945 (4th Cir. 1995) (rejecting an assertion of futility when claimant did not file a written claim and alleged, with no further foundation, that doing so would have been "a mere formality if not a charade"); Edwards v. SmithKline Beecham Corp., No. CIV. WDQ-08-1250, 2008 WL 8901269, at *3 (D. Md. Sept. 18, 2008), aff'd, 338 F. App'x 325 (4th Cir. 2009), and aff'd, 338 F. App'x 325 (4th Cir. 2009) ("Failing to receive benefits plan documents, without evidence that the plaintiff sought the documents or was told she could not have them, is insufficient to show futility."); Norris v. Boeing Co., No. 1:08CV273 (JCC), 2008 WL 2777411, at *3 (E.D. Va. July 14, 2008) ("However, as Plaintiffs have yet to instigate the formal claim process, the Court cannot agree with their assertion that the process has been proven futile."); Plaintiff "has neglected to exhaust her [p]lan remedies, and for lack of timeliness, cannot now do so." Gayle, 401 F.3d at 230. She has thus failed to demonstrate a cognizable legal claim and the Complaint must be dismissed.

Additionally, ERISA provides, with some limited exceptions, that plan participant benefits "may not be assigned or alienated except pursuant to "a qualified domestic relations order." 29 U.S.C. § 1056(d)(3)(A). ERISA defines a "domestic relations order" as any judgment, decree, or order which, "(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and (II) is made pursuant to a State domestic relations law . . . ." 29 U.S.C § 1056(d)(3)(B)(ii). A domestic relations order is "qualified" if it, among other things, gives an alternate payee the right to "receive all or a portion of the benefits payable with respect to a participant under a plan . . . ." 29 U.S.C. § 1056(d)(3)(B)(i)(I); see also, e.g., Hopkins v. AT & T Glob. Info. Sols. Co., 105 F.3d 153, 155–56 (4th Cir. 1997) In sum, ERISA preempts any equitable distribution or domestic relations order a state court might enter with respect to either survivor benefits or participant benefits unless that order qualifies as a QDRO. See 29 U.S.C. § 1056(d)(3)(A); Boggs, 520 U.S. at 844–846 (all instructing that other domestic relations orders are expressly made subject to the anti-assignment provision and are, as a result, preempted); see also Davenport v. Robert H. Davenport, D.D.S., M.S., P.A., 146 F. Supp. 2d 770, 777 (M.D.N.C. 2001). Absent a QDRO, the only way a participant can alter the designated beneficiary of surviving spouse benefits is by obtaining consent from the surviving spouse, or unless one of the exceptions to the need for spousal consent applies. See 29 U.S.C. §§ 1055(c)(1)(A)(i)-(ii), (c)(2) (establishing a surviving spouse may waive spousal benefits by consenting in writing to the designation of a different beneficiary or by impliedly consenting through various means); Davenport, 146 F. Supp. 2d at 777.

Here, Plaintiff lacks a valid QDRO entitling her to the Plans' benefits. As Plaintiff admits, Judge Creech, herself, and her ex-husband, left both QDROs unsigned. There is no valid QDRO permitting the alienation of Plaintiff's ex-husband's benefits. (See Doc. No. 1.) In fact, Defendant

10

Case 3:23-cv-00369-FDW-DCK   Document 20   Filed 08/07/24   Page 10 of 11

has introduced express evidence Plaintiff is not entitled to alienate her ex-husband from the Plans, specifically in Judge Wylie's Order. (See Doc. No. 12-2.) Given the lack of a valid QDRO, Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

As plead, Plaintiff has failed to exhaust the administrative remedies available to her through both the RCBP and the RSP. Additionally, Plaintiff has failed to present a valid QDRO entitling her to any portion of the Plans in the first instance. Therefore, this Court must dismiss Plaintiff's Complaint with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (Doc. No. 12), is GRANTED, and Plaintiff's Complaint is DISMISSED with prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion to Consolidate, (Doc. No. 19), is DENIED as moot.

**IT IS SO ORDERED.**

Signed: August 6, 2024

Frank D. Whitney
United States District Judge